```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :    CRIMINAL ACTION
                              :
          v.                  :
                              :
CALEEM BOONE                  :    NO. 06-475
```

                         MEMORANDUM AND ORDER

McLaughlin, J.                                    January 11, 2007

          The defendant was arrested on May 9, 2006, by the Philadelphia Police after a foot chase. The police recovered a gun which the defendant allegedly threw to the ground and cocaine and currency allegedly found on the person of the defendant. The defendant also gave a statement to the police. The defendant moves to suppress all physical evidence and his statement. The Court will deny the motion.

I.    Findings of Fact

        On May 9, 2006, shortly after 8:00 p.m., Officer Jeffrey Mannings and Officer Dayton Bennett went to the location of Camac and Venango Streets in Philadelphia two to three minutes after receiving a radio call that there were two males on that corner pointing guns at each other. The two men were described as wearing a gray hoodie with jeans and a black hoodie with jeans. Within the year ending in May 2006, there were five or six homicides and multiple shootings on the corner of Camac and

Venango Streets.  There also were numerous drug complaints and drug calls from neighbors in the area.  The corner is in the Captain's five squad corners list.

As the police officers pulled up to Camac and Venango Streets, they observed a group of five to 10 people on the corner.  As the officers, who were in uniform in a marked police car, pulled up to the corner, the defendant and a juvenile looked at the police and walked away very quickly westbound on Venango from Camac Street.  These two individuals stood out to the police right away because of their clothing and conduct.  The juvenile matched the description given over the radio.  He had on a gray hoodie and jeans.  The defendant had on a black jacket, but not a hoodie.

The two individuals looked in the direction of the police and began walking away, walking close together.  They kept looking back over their shoulders in the direction of the police.  Officer Bennett was driving the car and he positioned the vehicle so that the two individuals could not double back down Venango Street.  As he got out of the car, Officer Mannings said, "What's up, fellas?"  Officers Mannings and Bennett were going to conduct a PED investigation of the two people.  A PED investigation is a stopping of the individuals to talk to them and see if they appear to be suspicious.

The defendant and the juvenile then took off running. Officer Mannings did not have a weapon drawn. The individuals went west on Venango and then turned south on 13th Street. They were running side-by-side. Officer Mannings was about one car length behind when they broke into a run.

Officer Mannings pursued the two individuals on foot and Officer Bennett drove his car west on Venango and then south on 13th Street. Officer Mannings saw the defendant reach in front of himself and toss a gun to the ground. The gun landed right in front of Officer Mannings who picked it up.

Officer Bennett observed Officer Mannings chasing the two males. The juvenile was in front of the defendant. Officer Bennett passed his partner who was on foot. Officer Bennett observed the defendant grasp his waistband with his right hand and pull some object out of his waistband and throw it to the ground. While the defendant was doing this, he was running and looking over his shoulder at Officer Mannings. The object appeared to Officer Bennett to be a gun, although the officer could not be positive. Officer Bennett has had several foot chases and car pursuits when males removed a weapon from their waistband and threw it away. It is always a similar tossing motion and this appeared to be the same. The object was fairly heavy and it was not a ball or anything like that. Officer Bennett maneuvered his car around the defendant in a defensive

position.  The defendant's momentum took him into the fender of Officer Bennett's vehicle.  Officer Mannings yelled to Officer Bennett that he had recovered a gun.  All of this occurred in a matter of minutes.  Officer Bennett padded the defendant down for other weapons, found none, handcuffed him and put him in the back of the car.

Officer Mannings proceeded to chase the juvenile.  The juvenile went south on 13th Street and east on Tioga.  As Officer Mannings ran, he held in his hand the weapon that the defendant had thrown down.

Officer Bennett put the defendant in the back of his car and went to secure his partner.  He was concerned for Officer Mannings' safety because the radio call was that the two males had guns.  He found Officer Mannings in the 3500 block of Marvine Street.  No other weapon was recovered.

The defendant did not appear to be under the influence of drugs or alcohol.  Nor did he appear to be injured.

When the defendant was in the back of Officer Bennett's car, he said something to the effect that the gun was not his. He removed Mr. Boone from his vehicle and conducted a detailed search.  He recovered thirty-five small packages of an off-white chunky substance from him that he thought was crack cocaine.  He saw that the defendant had $80 in U.S. currency on him, but he did not take it.  This was a discretion call.  He thought that

the charge was going to be mere possession, so he did not take the money.

Neither Officer Bennett nor Officer Mannings gave the defendant Miranda rights on the street.  Neither officer asked him any questions, except that Officer Bennett asked if he was hurt and the defendant did not say anything.  At the station, the officers learned that the defendant accidentally shot himself in his groin area about a week before May 9, 2006.

Detective James Miles was assigned to the arrest of the defendant on the evening of May 9, 2006.  The detectives work on rotation.  They get arrests as they come in.  He was assigned the case at approximately 9:00 p.m.  He performed a drug test on the items that were seized and took a statement from the defendant.  In the course of the interview, he learned that the defendant had $80 on his person and he confiscated the $80.

The defendant was talkative and he appeared to understand what was going on around him.  Mr. Boone talked to the detective about the injuries he sustained the week before.  Detective Miles thinks they may have used the elevator rather than the stairs to go to the interview room because of the defendant's injuries.  The defendant was walking slowly and showed discomfort in his leg area.  Detective Miles saw the defendant for the first time at about 11:30 p.m.  Prior to that, the defendant was in a cell room on the first floor.  The people

in the cell room will not accept an arrested person if there are any obvious injuries. The people in the cell room would have reviewed the defendant's prior injuries to see if there are any new injuries. Had they seen anything, they would have sent him to the hospital. They did not.

Detective Miles used a Form 75-331 to give the *Miranda* warnings. He read them to the defendant. The defendant acknowledged his responses. The defendant waived his *Miranda* rights. Mr. Boone seemed intelligent and very aware of what was going on. Detective Miles had no reason to doubt that the defendant could read.

II. *Analysis*

At the time the gun was recovered, the defendant was not "seized" within the meaning of the Fourth Amendment. The defendant threw the gun to the ground and Officer Mannings picked it up. Before Officer Mannings picked up the gun, the defendant had not subjected himself to the authority of the police. *See California v. Hodari D.*, 499 U.S. 621, 623 (1991). The police, therefore, had not seized the defendant. All the police officer did was get out of the car and say "what's up fellas." The defendant then took off running. The police pursued the defendant and that is when the defendant threw the gun to the ground.

The defendant argues that even if the recovery of the gun did not violate the Fourth Amendment, Officer Bennett, who stopped the defendant by pulling his car in front of the defendant, did not know about the seizure of the gun at the time he stopped the defendant.  Therefore, the defendant argues, even if the gun should not be suppressed, the drugs and the defendant's statement must be suppressed because they came as the result of an illegal arrest by Officer Bennett.

There are two problems with this argument.  First, Officer Bennett's pulling of his car in front of the defendant was not an "arrest" for which probable cause was required.  It was a <u>Terry</u> stop for which articulable suspicion was necessary. By the time Officer Bennett arrested the defendant, he knew about his partner's seizure of the gun so there was probable cause for the arrest.

The Court also concludes that there was articulable suspicion for the stopping of the defendant.  Officer Bennett received the radio call that said that two men had been pointing guns at each other; one of the two men, the juvenile, matched the description and although the defendant was not wearing a black hoodie, he did have on a black jacket.  Although the tip in and of itself would not have been enough for a <u>Terry</u> stop, the defendant and the juvenile looked to the police and then walked away.  When the police said, "what's up fellas," they ran.

Officer Bennett knew all of this and knew that the area was a high crime area.  In addition, Officer Bennett saw the defendant go to his waistband, take out a heavy object and throw it to the ground.  Although he could not say definitely that it was a gun, it did look like a gun.  When the Court puts all of this together, the Court does think there was articulable suspicion for the police officer to pull his car in front of the defendant to stop the defendant.

As to the statement, the defendant was given his <u>Miranda</u> warnings and appeared to understand them.  He waived his rights.  There is nothing to indicate that the statement was in any sense involuntary.  Although the defendant had injured himself a week or so before the arrest, there is no indication that this impacted him in any way in the giving of his statement.  Nor does the Court believe that anything that occurred in the police car was improper or caused the later giving of a statement after full <u>Miranda</u> warnings.  The Court does not make any ruling here on the admissibility of the statement under normal evidentiary rules, including Rule 403.

An appropriate order follows.

```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :    CRIMINAL ACTION
                              :
         v.                   :
                              :
CALEEM BOONE                  :    NO. 06-475
```

ORDER

AND NOW, this 11th day of January, 2007, upon consideration of defendant's motion to suppress (Docket No. 21), the government's response thereto, and after oral argument held on January 4, 2007, IT IS HEREBY ORDERED that said motion is DENIED for the reasons stated in the Memorandum of today's date.

```
                         BY THE COURT:


                         /s/ Mary A. McLaughlin
                         MARY A. McLAUGHLIN, J.
```